LYNTON R. NEWHALL *vs.* CHARLES R. EGAN *et als.*

JANUARY 6, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Arrest Without Warrant. Justification.*

When an officer makes an arrest without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate. To detain him in custody for any other purpose is illegal, and, even if it were com-

petent for the arrested person to enter into an agreement with the officer to release any claim for damages on account of a failure to make complaint (which doctrine has never been recognized in this State), no such transaction can be inferred where the arrested person, after being detained at the station, is, by arrangement with his father, released in the custody of the latter to appear when wanted, and no further proceedings were ever taken.

(2) *Bills of Exception. Writ of Error.*

After verdict for defendants, on petition of plaintiff for new trial, same was granted by the Superior Court. Defendants thereupon filed a bill of exceptions, and plaintiff also filed a bill subject to the decision of the court upon defendant's bill:

*Held,* that, under our present practice, the bill of exceptions has practically superseded the writ of error, as by it the whole record can be brought before the court for examination; and where the court, upon consideration of the record, finds that the verdict was founded upon such error of law as to be decisive of the cause, and that upon the pleadings and evidence verdict should have been for the plaintiff rather than, as found, for the defendants, the court, under the provisions of C. P. A. § 495, will order defendants to show cause why such entry of judgment should not be made.

TRESPASS. Heard on exceptions of both parties.

JOHNSON, J. The action is trespass for assault and battery and false imprisonment, brought in the Superior Court for the counties of Providence and Bristol, against Charles R. Egan, James A. Lee, and John J. Toole, all of the city of Providence.

The declaration alleged that on the 24th day of March, 1906, the defendants assaulted and arrested the plaintiff, and took him through divers streets to the Central Police Station in said city, and there unlawfully detained him for the space of three hours. There were in addition two formal counts, one for false imprisonment and one for assault.

The defendant Toole filed only a plea of not guilty, and as the jury found in his favor, and the plaintiff did not ask for a new trial as to him, he is no longer concerned in the case.

Each of the other defendants filed a plea of not guilty, and also a plea in confession and avoidance, that while they were engaged in the performance of their duties as police constables in establishing and maintaining fire lines at a fire, the plaintiff struck the defendant Egan in the face, and that they thereupon, in accordance with their duty as such police constables, placed him under arrest, using no more force than was necessary, and

took him to the Central Police Station, where they put him into the charge of a superior officer. To the pleas of justification the plaintiff filed replications *de injuria*, and also replications alleging the use of excessive force by these defendants.

The case was tried before Mr. Justice Brown and a jury, on the 19th and 20th days of March, 1907.

It appears from the evidence that a little before seven o'clock in the evening of Saturday, March 24, 1906, there was a fire in a building on Weybosset street, in the city of Providence, opposite the Narragansett Hotel. The firemen came to put it out, and the defendants and other police officers assisted them by pushing back the crowd of people that assembled, and establishing fire lines. While they were thus engaged, and when they had got the crowd on the sidewalk by the hotel back to a point some twenty-five feet west of the entrance to the hotel, the plaintiff, who was a young man twenty-two years old, came out of this entrance. He was then within the fire lines, and as he stopped a moment to look at the fire, the defendant Egan pushed him back to the crowd. What happened next is in dispute, the plaintiff stating that Egan, without just cause, struck him repeatedly in the face with his fist, although he offered no resistance; while Egan stated that the plaintiff struck him, and he did not strike the plaintiff at all. At any rate, Egan seized hold of the plaintiff and arrested him without a warrant. The defendant Lee came up just then, and together they took the plaintiff on foot to the Central Police Station, where he was detained nearly two hours.

In the meantime the plaintiff's father came to the station, and by calling up the chairman of the police commission by telephone arranged with him to have the plaintiff released in his custody to appear when wanted by the police authorities. He was accordingly released in the custody of his father, and both of them were told by the authorities at the station that he was to appear at the court there the next Monday morning.

They went to the police station at the time set, but no proceedings were taken against the plaintiff. No charge was made against him on the books of the station the night of the arrest, until after he had gone, when the charge "disorderly"

was entered. He tried several times to get the police authorities to take up the matter against him, but no complaint was ever made against him or warrant issued, and they refused to take him before a magistrate for a hearing.

The only matter as to which there is any material conflict of testimony is what took place immediately before the arrest. Besides the plaintiff, five young men who were present in the crowd at the fire, and who were not previously acquainted with the plaintiff, testified that they saw Egan strike the plaintiff repeatedly in the face with his fist, knocking the plaintiff's hat off; that the plaintiff did not resist him or strike back, and had his hands down until he threw one of them up in the attempt to catch his hat. Most of them testified that they saw the whole affair, and were positive that the plaintiff never struck Egan. On the other hand, all three defendants and one other policeman testified that the plaintiff struck Egan once, and that the latter did not strike him. Two other witnesses testified that the plaintiff knocked Egan's cap off, and that they did not see Egan strike the plaintiff. Nobody testified that the plaintiff resisted arrest or made any attempt to get away.

In the course of his charge the trial justice instructed the jury as follows:

"If, however, the arrest was legal and properly made, and the officer making the arrest neglected to make such complaint against the prisoner but released him in response to the appeal of himself or his friends, made with his consent, that he might be so released with the understanding that he would come forward when wanted by the authorities and not before, to respond to a charge for the offence, this circumstance would warrant the officer in inferring that he was not to be held responsible in damages to the plaintiff for yielding to the appeal, and the mere neglect to make a complaint, the authorities not wanting the prisoner, would not warrant the finding that the officer is liable for false imprisonment."

To this part of the charge the plaintiff took an exception.

The jury returned a verdict for the defendants, and in due time the plaintiff filed a motion for a new trial, as to the de-

fendants Egan and Lee, on four grounds, of which only the first three are now material.

"*First.* That there was no evidence to support the said verdict in favor of the said defendants, inasmuch as it was admitted by them that no complaint was made or warrant issued against the said plaintiff, and no legal excuse was shown by them why such complaint was not made or warrant issued.

"*Second.* That the said verdict as to the said defendants was against the law and the evidence.

"*Third.* That the said verdict as to the said defendants was against the evidence and the weight thereof."

After the argument this motion was granted on the following ground, as stated by Mr. Justice Brown in his decision:

"The jury must have overlooked or misapplied the evidence or been actuated by improper motives. To my mind justice has not been done between the parties, and although there is evidence of probative force on both sides of the issue raised in the case, I am of the opinion that the verdict is clearly against the weight of evidence."

In due course the defendants Egan and Lee filed a bill of exceptions, setting forth two grounds of exception:

1. That the trial justice erred in granting said plaintiff's motion for a new trial.

2. That said justice erred in refusing to charge the jury at said trial as requested by defendants.

Only the first ground is now material.

The plaintiff also filed a bill of exceptions subject to the decision of the Supreme Court upon the defendant's bill of exceptions, and to be relied upon in the event that the defendant's bill of exceptions should be sustained by this court. This set forth two exceptions, only the first of which is now relied on, being the one set forth above to a part of the charge to the jury. These two bills of exceptions, and the transcripts accompanying them, were duly allowed by the trial justice.

The motion for a new trial in the Superior Court, on the ground that the verdict was against the evidence, involved only the question whether the evidence supports the verdict on the issue submitted to the jury. That issue, on the pleadings,

was the question of the use of excessive force by the defendants in making the arrest, as their pleas did not set up any legal justification. But, although the pleadings did not involve the real issue, both parties apparently introduced all the evidence that existed applicable to a full justification, and the jury, under instructions of the court, seem to have found that the arrest was justified and the force used not excessive.

The instruction to which the plaintiff excepted is erroneous. (1) Any officer charged with the preservation of the public peace may arrest, without warrant, any person who is committing, or has committed, a breach of the peace in his presence, or within his view. 3 Cyc. 881; *Douglass* v. *Barber*, 18 R. I. 459. When an officer makes an arrest, without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate or other proper judicial officer having jurisdiction, in order that he may be examined and held or dealt with as the case requires. He may, however, detain the person arrested in custody a reasonable time, until he can conveniently and safely take him before a magistrate when the circumstances preclude an immediate examination, hearing, or trial; but to detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal. 3 Cyc. 895–6, and cases cited.

Certain Massachusetts cases are cited in which an apparent exception to the general rule has been recognized. The general rule is followed there, that justification for an arrest without warrant fails unless the arrested person is taken promptly before a magistrate and a complaint made against him. In several cases, however, the doctrine is laid down that the arrested person can not complain that this was not done if he has been discharged at his own request, or with his consent, and under an agreement between him and the officers of the law, intelligently entered into by him, that he will release any claim for damages on account of a failure to make complaint, and that they will take no further proceedings against him. *Phillips* v. *Fadden*, 125 Mass. 198; *Caffrey* v. *Drugan*, 144 Mass. 294; *Joyce* v. *Parkhurst*, 150 Mass. 243. This exception to the general rule has never been recognized in this State,

and even if it were competent for the parties, had they been so minded, to have compromised the claim for damages, no such transaction can be inferred from the facts in this case.   The evidence therefore shows that the defendants were guilty of the wrongs charged in the declaration, and no justification or release appears.

The decision of the trial judge that the verdict was against the evidence was correct, and the defendants' exceptions thereto must be overruled.

(2)   We have said, *supra,* that the pleadings did not involve the real issue in the case.   The pleas in justification would have been bad on demurrer, but the plaintiff, instead of demurring, replied specifically on the question of excessive force.   After verdict the plaintiff at common law could have moved for judgment *non obstante veredicto,* or in arrest of judgment, or after judgment could have applied for a writ of error.   The motion in arrest of judgment, however, is abolished by section 301, C. P. A., except for want of jurisdiction.   The former motion was not made.   The bill of exceptions given by our statute has practically superseded the writ of error, as by it the record can be brought before the court for examination before the entry of judgment, although the Supreme Court has power to issue the writ—Sec. 2, C. P. A.

Section 495, C. P. A., provides: "The supreme court, after deciding the questions presented in a bill of exceptions, shall remit the cause, with the papers therein, to the superior court, with direction for such further proceedings as to law and justice shall appertain:   *Provided,* that when the supreme court shall find that there is no evidence to support the verdict or decision, or that the verdict or decision is founded on such error of law as to be decisive of the cause, it may order judgment entered in the superior court for the party prosecuting the exceptions; but judgment shall not be ordered against the party in whose favor the verdict or decision was rendered, until opportunity shall have been given to such party to show cause why such order should not be made."

On the bill of exceptions the record of the case is before us. If the new trial should proceed upon the pleadings as they

stand, the errors of the former trial might well be repeated and the case come up again in the same unsatisfactory condition as at present. It appears to us, therefore, to be necessary to consider the whole record. If the case was before us on a writ of error, that would manifestly be our duty; and in view of the power of the court under the statute above cited, we are compelled to take notice of and deal with errors upon the record which have clearly caused a failure of justice.

In explaining in what reversible error upon the record may consist, Stephen on Pleading, Heard's ed. *pp. 119–120, says:

"But the most frequent case of error, is when, upon the face of the record, the judges appear to have committed a mistake in the *law*. This may be, by having *wrongly decided an issue in law* brought before them by demurrer; but it may also happen in other ways. As formerly stated, the judgment will, in general, follow success in the issue. It is, however, a principle necessary to be understood, in order to have a right apprehension of the nature of writs of error, that judges are, in contemplation of law, bound, before in any case they give judgment, to *examine the whole record;* and then to adjudge either for the plaintiff or defendant, according to the legal right, as it may on the whole appear—notwithstanding, or without regard to, the issue in law, or fact, that may have been raised and decided between the parties; and this, because the pleader may from misapprehension have passed by a material question of law, without taking issue upon it. Therefore, whenever, *upon examination of the whole record*, right appears on the whole, not to have been done, and *judgment appears to have been given, for one of the parties, when it should have been given for the other*, this will be *error in law*. And it will be equally error, whether the question was raised on *demurrer*—or the issue was an issue in *fact*— or there was *no issue;* judgment having been taken by default, confession, &c. In all these cases, indeed, except the first, the judges have *really* committed no error; for it may be collected, from preceding explanations, that no record, or even a copy of the proceedings, is actually brought before them, except on demurrer; but, with respect to a writ of error, the effect is the same as if the

proceedings had all actually taken place and been recorded in open court, according to the practice of ancient times.''

Our conclusion from an examination of the record, therefore, is that the verdict was founded on such error of law as to be decisive of the cause, and that on the pleadings and the evidence the verdict should have been for the plaintiff.

The defendants are therefore required to appear on the thirteenth day of January, 1908, at ten o'clock A. M., and show cause why an order should not be entered that the new trial be had solely on the question of damages, and that after the assessment of damages, judgment be entered for the plaintiff.

*Gardner, Pirce & Thornley* and *Charles R. Haslam,* for plaintiff.

*William W. Moss,* of counsel.

*Henry C. Cram, and Elmer S. Chase,* for defendants.